**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHIVA STEIN,<br><br>Plaintiff,<br><br>v.<br><br>HMS HOLDINGS CORP., ROBERT BECKER, BILL LUCIA, CRAIG R. CALLEN, KATHERINE BAICKER, ELLEN A. RUDNICK, JEFFREY A. RIDEOUT, BART M. SCHWARTZ, RICHARD H. STOWE, CORA M. TELLEZ, GAINWELL ACQUISITION CORP., GAINWELL INTERMEDIATE HOLDING CORP., AND MUSTANG MERGERCO INC.<br><br>Defendants. | Civil Action No. _______________<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against HMS Holdings Corp. ("HMS or the "Company") and the members HMS board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of HMS by Gainwell Acquisition Corp. ("Gainwell") and its affiliates.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on February 4, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Mustang MergerCo Inc. ("Merger Sub"), a wholly owned subsidiary of Gainwell, will merge with and into HMS with HMS surviving the merger and becoming a wholly owned subsidiary of Gainwell (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each HMS common share issued and outstanding will be converted into the right to receive $37.00 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked HMS stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Barclays Capital Inc. ("Barclays") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to HMS stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Gainwell is headquartered in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of HMS common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Robert Becker has served as a member of the Board since January 2016.

11. Individual Defendant Bill Lucia has served as a member of the Board since May 2008 and as the Company's President and Chief Executive Officer since March 2009, and as Chairman of the Board since July 2015.

12. Individual Defendant Craig R. Callen has served as a member of the Board since October 2013.

13. Individual Defendant Katherine Baicker has served as a member of the Board since June 2019.

14. Individual Defendant Ellen A. Rudnick has served as a member of the Board since 1997.

15. Individual Defendant Jeffrey A. Rideout has served as a member of the Board since June 2019.

16. Individual Defendant Bart M. Schwartz has served as a member of the Board since July 2010.

17. Individual Defendant Richard H. Stowe has served as a member of the Board since 1989 and as Lead Independent Director since July 2015.

18. Individual Defendant Cora M. Tellez has served as a member of the Board since October 2012.

19. Defendant HMS is incorporated in Delaware and maintains its principal offices at 5615 High Point Drive, Irving, Texas 75038. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "HMSY."

20. Defendant Gainwell is a Delaware corporation and an affiliate of Veritas Capital Fund Management, L.L.C. ("Veritas"), Merger Sub, and Gainwell Intermediate Holding Corp. Gainwell was formed in 2020 for the purpose of acquiring and running Gainwell Technologies LLC, a Califorania limited liability company formerly known as DXC MS LLC. Gainwell maintain its principal offices at c/o Veritas Capital Fund Management, L.L.C., 9 West 57th Street, 32nd Floor, New York, New York 10019.

21. Defendant Merger Sub is a Delaware corporation and direct wholly-owned subsidiary of Gainwell solely for the purpose of engaging in the Proposed Transaction. Merger

Sub's principal offices are at c/o Veritas Capital Fund Management, L.L.C., 9 West 57th Street, 32nd Floor, New York, New York 10019.

22. Gainwell Intermediate Holding Corp. ("Internediate Holdco") is a privately owned Delaware corporation and an affiliate of Veritas, Gainwell, and Merger Sub and is the parent company of Gainwell. Intermediate Holdco's principal offices are located at c/o Veritas Capital Fund Management, L.L.C., 9 West 57th Street, 32nd Floor, New York, New York 10019.

23. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

24. The defendants identified in paragraphs 10-22 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. <u>The Proposed Transaction</u>

25. HMS, through its subsidiaries, provides cost containment solutions in the United States healthcare marketplace. The Company offers coordination of benefits services to government and commercial healthcare payers to ensure that the correct party pays the claim; and population management solutions that provide risk-bearing organizations with intelligence across their member populations to identify risks, and enhance patient engagement and outcomes, as well as payment integrity, care management and consumer engagement, and analytical solutions. It serves state Medicaid programs, commercial health plans, federal government health agencies, government and private employers, children's health insurance program, and other healthcare payers, as well as a subcontractor. The Company was founded in 1974 and is headquartered in Irving, Texas.

26. On December 21, 2020, HMS announced that they had entered into a proposed transaction:

IRVING, Texas, Dec. 21, 2020 (GLOBE NEWSWIRE) -- HMS (Nasdaq: HMSY) ("HMS"), an industry-leading technology, analytics and engagement solutions provider helping organizations reduce costs and improve health outcomes, and Veritas Capital ("Veritas")-backed Gainwell Technologies ("Gainwell"), a leading provider of solutions that are vital to the administration and operations of health and human services programs, today announced that they have entered into a definitive agreement whereby Gainwell will acquire HMS. Under the terms of the agreement, HMS shareholders will receive $37.00 in cash per share. The per share purchase price represents a 52% premium to HMS' unaffected share price as of October 2, 2020, the last trading day prior to when reports of a possible transaction were published, and a 17% premium over the 30-day volume-weighted average price per share of HMS' common stock through the close of trading on December 18, 2020, the last trading day before the announcement of the transaction. The transaction is expected to close in the first half of 2021.

Veritas will look to optimize the HMS solution set across Gainwell and Veritas-backed Cotiviti, Inc. ("Cotiviti"), a leading provider of data-driven healthcare solutions. Gainwell will acquire the HMS capabilities focused on the Medicaid market, including solutions delivered to states and managed care organizations, and Cotiviti will acquire the HMS capabilities focused on the commercial, Medicare, and federal markets. The addition of the HMS business lines will further expand Gainwell's and Cotiviti's capabilities with unique, data-driven technology and service solutions expected to drive greater impact in the healthcare market. Clients will be offered a broad range of complementary, scalable and flexible solutions that improve outcomes and quality as well as reduce waste and inefficiencies through technological innovation, service excellence and unparalleled industry expertise.

"HMS has built a market-leading healthcare technology and analytics enterprise, and we believe this transaction delivers compelling and certain value to our shareholders while enhancing our ability to provide clients with world-class, data-driven analytics solutions," said Bill Lucia, Chairman and CEO of HMS. "Our board of directors and executive leadership team conducted a thorough review of a wide range of strategic alternatives and, after careful consideration, we determined this outcome to be the best path forward for our shareholders, clients and employees."

Ramzi Musallam, CEO and Managing Partner of Veritas, a leading investor in government and healthcare technology businesses, said, "HMS has developed a highly differentiated set of capabilities that deliver tangible value across the government and commercial healthcare payer spectrum. By aligning HMS' market focus with Gainwell and Cotiviti, these organizations can become even more strategically aligned to their customers' missions. We look forward to working closely with the talented teams at HMS, Gainwell and Cotiviti to ensure successful combinations while advancing the collective goal of reducing costs and improving health outcomes nationwide."

> Paul Saleh, President and CEO of Gainwell, said, "We are thrilled to bring together two exceptional heritages in the healthcare technology marketplace. Through this partnership, our continuum of capabilities will enable us to deliver more value to our clients as we work together to bend the healthcare cost curve and improve outcomes. With the support and strategic guidance of Veritas, we look forward to bringing together our teams, technologies and solutions to continue to innovate for our clients."
>
> Emad Rizk, President and CEO of Cotiviti, said, "HMS' capabilities are highly complementary to Cotiviti's product portfolio. We are excited to broaden our impact by reaching more customers and introducing new technologies to the marketplace. Together, our commitment to helping organizations better assess, manage, and improve clinical and financial outcomes is more compelling than ever."
>
> **Transaction Details**
>
> The transaction will result in an enterprise value for HMS of approximately $3.4 billion. The transaction, which was unanimously approved by HMS' Board of Directors, is expected to close in the first half of 2021. The closing of the transaction is subject to the approval of HMS shareholders and the satisfaction of customary closing conditions, including applicable regulatory approvals.
>
> **Advisors**
>
> Barclays is acting as financial advisor to HMS, and Latham & Watkins LLP is serving as legal advisor to HMS.
>
> Goldman Sachs & Co. LLC is acting as exclusive financial advisor to Gainwell, and Schulte Roth & Zabel LLP is serving as legal advisor to Gainwell.

27. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that HMS's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B. <u>The Materially Incomplete and Misleading Proxy Statement</u>**

28. On February 4, 2021, HMS filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's

stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning HMS Financial Projections*

29. The Proxy Statement fails to provide material information concerning financial projections by HMS management and relied upon by Barclays in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that HMS management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

30. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, EBITDA,

NOPAT, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

31. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

32. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

33. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement,

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Barclays's Financial Analysis*

34. With respect to Barclays's *Selected Comparable Company Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Barclays in the analysis.

35. With respect to Barclays's *Selected Precedent Transactions Analysis* for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Barclays in the analysis, including the values and premiums of the transactions, and dates of closing of the transactions.

36. With respect to Barclays's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 4.0% to 5.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 9.0% to 10.0%; (iv) the line items values used to calculate the after-tax unlevered free cash flows, including, tax-affected earnings before interest, tax expense, amortization (excluding amortization of purchased intangibles), depreciation and amortization (excluding amortization of purchased intangibles), capital expenditures, acquisition expenditures and changes in working capital, and stock-based compensation expense; (v) net debt of the Company as of September 30, 2020; and (vi) the fully diluted number of shares of HMS stock.

37. With respect to Barclay's *Leveraged Acquisition Analysis*, the Proxy Statement fails to disclose the inputs and basis for using the following assumptions in its analysis: (i) a debt capital structure of HMS comprised of pro forma leverage of total debt to EBITDA of 7.0x, (ii) an

equity investment that would achieve an internal rate of return of 17.5% on equity invested during a five-year period, and (iii) a projected EBITDA terminal value multiple of 11.5x to 14.5x for such period.

38. With respect to Barclay's *Illustrative Present Value of Future Stock Price Analysis*, the Proxy Statement fails to disclose: (i) the implied future enterprise values of HMS for fiscal year end 2021 and each of the next two fiscal year ends; (ii) the basis and inputs for applying ratios of HMS's EV to EBITDA ranging from 11.5x to 14.5x to NTM EBITDA estimates; (iii) projected amount of HMS's net debt as of each respective fiscal year end; (iv) the estimated fully diluted number of shares of HMS common stock; (v) the inputs and assumptions for using a discount rate of 10.5%; (vi) the estimate of the cost of equity for HMS.

39. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Barclays and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of

the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

45. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of HMS within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of HMS, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of HMS, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of HMS, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

50. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: February 8, 2021

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

Email: melwani@whafh.com

*Attorneys for Plaintiff*